IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,                                        Cr. No. 19-3106 JAP

v.

LEO MUNOZ,

      Defendant.

**MEMORANDUM OPINION AND ORDER**

On September 11, 2019, a federal grand jury charged Defendant Leo Munoz in a one-count indictment with being a felon in possession of a firearm and ammunition in violation of 18 U.S.C. §§ 922(g)(1) and 924.[1] Defendant seeks to suppress the firearm, ammunition, and statements he made during his arrest, which he claims are the fruits of an unlawful detention.[2] For the reasons below, the Court will deny Defendant's Motion.

I.    **BACKGROUND**[3]

Around 9:30 p.m. on August 14, 2019, Albuquerque Police Department Officers Bryce Willsey and Garret Maxson conducted a traffic stop of a 1998 Toyota Camry. Hr'g Tr. at 3:10–16, 18:1–3.[4] Defendant was the driver and Felicia Garcia was the passenger. *Id*. at 6:24–7:2, 25:20–23. Officer Willsey stopped the Camry because he could not see a license plate or temporary tag affixed to the back of the vehicle as required by N.M. Stat. Ann. § 66–3–18(A). *Id*. at 3:18–20. After pulling over Defendant's vehicle, but before exiting the marked patrol car, both officers observed body movement on the driver's side, which included Defendant leaning forward toward

---

[1] *See* INDICTMENT (Doc. 13).
[2] *See* MOTION TO SUPPRESS ("Motion") (Doc. 29). The Motion is fully briefed. *See* UNITED STATES' RESPONSE IN OPPOSITION TO THE DEFENDANT'S MOTION TO SUPPRESS (Doc. 37); DEFENDANT'S REPLY TO THE GOVERNMENT'S RESPONSE TO HIS MOTION TO SUPPRESS (Doc. 38).
[3] The following section constitutes the Court's essential findings of fact under Federal Rule of Criminal Procedure 12(d).
[4] This MEMORANDUM OPINION AND ORDER cites to the court reporter's unofficial transcript. All page and line citations are subject to change on the official, edited transcript.

the floorboard and to the passenger side.   *Id*. at 4:15–22, 22:3–18.  On their initial approach to the Camry, neither officer observed a license plate affixed to the rear bumper.  *Id*. at 5:1–10; 22:22–25. However, once the officers were approximately 3-5 feet away from the vehicle, with the help of a flashlight, they saw a license plate taped to the inside of the rear window.  *Id*. at 5:1–11, 22:24–36:6. The officers needed the flashlight to illuminate the license plate because the Camry had dark tinted windows.  *Id*.

After seeing the license plate, Officer Willsey approached the driver's side of the vehicle to further investigate the infraction, and Officer Maxson provided security by going to the passenger's side.  *Id*. at 5:23–6:10; 23:9–12.  Officer Willsey first explained to Defendant the purpose of the stop, Gov. Ex. 3 at 0:00:38, and requested Defendant's driver's license.  *Id*. at 0:00:48.  While Defendant retrieved his license, Officer Willsey inquired whether there were firearms inside the vehicle.  *Id*. at 0:00:54.  Defendant responded in the negative.  *Id*. at 0:00:55.  Concurrent with Defendant's answer, Officer Maxson asked Ms. Garcia to exit the vehicle because he observed in plain view a pink painted handgun in her purse.  Hr'g Tr. at 28:3-11; Gov. Ex. 4 at 0:00:24; *see* Gov. Ex. 3 at 0:00:56.  For verbal confirmation of the weapon's presence, Officer Maxson then asked Ms. Garcia what was in her purse and whether it was a gun.  Gov. Ex. 4 at 0:00:30-33.  Ms. Garcia confirmed that the object was a handgun and got out of the vehicle.  *Id*. at 0:00:36.  Officer Maxson directed Ms. Garcia to sit on the curb behind the car and Officer Maxson then secured the painted handgun.  *Id*. at 0:00:44–50.

As Ms. Garcia exited the vehicle, Officer Willsey asked Defendant whether Ms. Garcia had a gun.  Gov. Ex. 3 at 0:01:09–13.  Defendant responded in the affirmative.  *Id*.  For officer safety, Officer Willsey requested that Defendant also step out of the vehicle, and he agreed.  *Id*. at 0:01:18. As Defendant stepped out of the vehicle, Officer Willsey observed a gun holster near the floorboard by Defendant's feet.  Hr'g Tr. at 13:3–9.  Officer Willsey then asked Defendant whether he had a

gun on his person.  Gov. Ex. 3 at 0:01:25.  Defendant replied that he is "not allowed to have guns." *Id*. at 0:01:27.  Once Defendant was out of the vehicle, Officer Willsey notified him that he was not under arrest but rather detained momentarily.  *Id*. at 0:01:35.  For officer safety, Officer Willsey performed a limited pat-down of Defendant.  *Id*. at 0:01:36; Hr'g Tr. at 9:13–17.  Officer Willsey then directed Defendant to sit on the curb behind the vehicle, and he complied.  At this point, Officer Willsey suspected that Defendant was a felon in possession of a firearm.  Hr'g Tr. at 11:12–16.

To investigate this suspicion, Officer Willsey returned to the driver's side of the vehicle and confirmed the presence of a gun holster on the floorboard, which was in plain view through the open driver's side window.  Hr'g Tr. at 13:5–9; Gov. Ex. 3 at 0:02:13.  Officer Willsey also ran Defendant's identifiers through police databases and conferred with other law enforcement officers at the scene.  Gov. Ex. 3 at 0:02:58.  After confirming the presence of the gun holster, and that Defendant was a felon, Officer Willsey handcuffed Defendant and detained him in the back of the marked patrol vehicle.  *Id*. at 0:06:13.

While Officer Willsey was conducting this investigation, Detective Montoya, who arrived after the initial stop, interviewed Ms. Garcia.  Ms. Garcia informed Detective Montoya that the weapon belonged to Defendant, Gov. Ex. 2 at 0:02:45, that she suspected him to be a felon, *id*., and that he placed the gun in her purse right before the vehicle was pulled over.  *Id*. at 0:03:05.

Also, after Officer Willsey detained Defendant, Special Agent Wozniak of the Bureau of Alcohol, Tobacco, and Firearms, who also had arrived on scene shortly after the stop was initiated, Mirandized Defendant.  Defendant then agreed to answer questions.  Gov. Ex. 5 at 0:02:20.  During this interview, Defendant admitted to painting the weapon and that he was a felon.  *Id*. at 0:07:22, 0:09:45.

Defendant was arrested and charged with being a felon in possession of a firearm.

## II.   LEGAL STANDARD

Under the Fourth Amendment, "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV.   "The basic purpose of this Amendment, as recognized in countless decisions of th[e Supreme] Court, is to safeguard the privacy and security of individuals against arbitrary invasions by governmental officials." *Camara v. Mun. Ct. of City & Cty. of S.F.*, 387 U.S. 523, 528 (1967).   To effectuate this basic purpose, the Supreme Court "establish[ed] an exclusionary rule that, when applicable, forbids the use of improperly obtained evidence at trial." *Herring v. United States*, 555 U.S. 135, 139 (2009).

## III.   DISCUSSION

Defendant contends that the evidence discovered during the traffic stop must be suppressed because Officers Willsey and Maxson exceeded the scope of the stop by unreasonably prolonging his detention.   Mot. at 4–5.   Specifically, Defendant argues that, once the officers perceived a license plate in the rear window, the stop should have terminated.   In Defendant's view, any questioning that occurred after that moment improperly exceeded the scope of the stop. Additionally, Defendant argues that the officers lacked independent reasonable suspicion to further detain him beyond the initial traffic stop.   *Id*. at 9.

### A.  The Initial Traffic Stop

The Fourth Amendment extends to brief investigatory stops of persons and vehicles. *Whren v. United States*, 517 U.S. 806, 809–10 (1996); *Terry v. Ohio*, 392 U.S. 1, 9 (1968).   "To be reasonable, a 'traffic stop must be justified at its inception and, in general, the officer's actions during the stop must be reasonably related in scope to 'the mission of the stop itself.'"   *United States v. Mayville*, 955 F.3d 825, 829 (10th Cir. 2020) (quoting *Rodriguez v. United States*, 575 U.S. 348, 356 (2015)).   "The mission of the stop includes both addressing the traffic violation

4

warranting the stop and attending to 'related safety concerns.'" *United States v. Cortez,* 965 F.3d 827, 837 (10th Cir. 2020) (quoting *Rodriguez*, 575 U.S. at 354, 356 ("negligibly burdensome precautions" are permissible to protect officer safety in light of the fact that the government's "officer safety interest stems from the mission of the stop itself")).  But an "officer's authority to seize the occupants of a vehicle ends when 'tasks tied to the traffic infraction are—or reasonably should have been—completed.'" *Cortez*, 965 F.3d at 833 (quoting *Rodriguez*, 575 U.S. at 354).

> 1. *N.M. Stat. Ann. § 66–3–18(A)*

Officer Willsey stopped the vehicle Defendant was driving for violating N.M. Stat. Ann. § 66–3–18(A).  Defendant does not dispute whether the stop was "justified at its inception."  Rather, Defendant argues that Officers Willsey and Maxson exceeded the scope of the stop by unreasonably prolonging his detention.  According to Defendant, once the officers detected the license plate, "the underlying suspicion that the vehicle lacked a valid registration plate was dispelled."  Mot. at 7. Therefore, Defendant believes that, aside from notifying him of the reason for the stop, all subsequent inquiry and detention—including Officer Willsey's request for Defendant's driver's license—exceeded the scope of the traffic violation and unreasonably prolonged his detention. Defendant relies on *United States v. McSwain*, 29 F.3d 558, 561 (10th Cir. 1994), for this proposition.  Defendant's reliance is misplaced.

In *McSwain*, a Utah state trooper stopped a motorist because he was unable to read the date on the vehicle's registration sticker. 129 F.3d at 560.  The trooper, however, was able to confirm the sticker's validity as he approached the vehicle.  *Id*.  The Tenth Circuit concluded that the trooper "exceeded the scope of [the] stop's underlying investigation"—which was to determine the validity of a vehicle's temporary registration sticker—when he requested the driver's identification and registration.  *Id*. at 561.  "Because the trooper had already confirmed that there was no traffic violation because the temporary registration sticker was valid, he no longer had any reasonable

suspicion that illegal activity had occurred or was occurring, and any further detention violated the Fourth Amendment." *Id*. at 561–62.

This case involves considerations absent from *McSwain*. New Mexico law requires the registration plate

> be attached to the rear of the vehicle for which it is issued . . . The plate shall be securely fastened at all times in a fixed horizontal position at a height of not less than twelve inches from the ground, measuring from the bottom of the plate. It shall be in a place and position so as to be *clearly visible*, and it shall be maintained free from foreign material and in a condition to be *clearly legible*.

N.M. Stat. Ann. § 66-3-18 (emphases added). Defendant does not address whether the license plate complied with this provision. Rather, Defendant maintains only that the "underlying suspicion that the vehicle lacked a valid registration plate was" dispelled once the officers illuminated the rear window. Mot. at 7. *McSwain* did not involve a law requiring plates to be "clearly visible" and "clearly legible." Defendant's argument fails to address the purpose of § 66–3–18, which is not whether the license plate is valid but instead whether it is properly displayed. Indeed, the New Mexico statute is entitled "Display of registration plates and temporary registration permits; displays prohibited and allowed." § 66–3–18.

Here, Officers Willsey and Maxson testified that they could not see Defendant's license plate until they illuminated the tinted rear window with a flashlight from approximately 3-5 feet away. Hr'g Tr. at 5:1–11, 22:24–36:6. Officer Willsey further testified that the license plate was "improperly placed" because it must be "affixed to the farthest rear position on a vehicle, which is most commonly the bumper." Hr'g Tr. at 5:14–17. He also testified that the plate was "illegible" from his vehicle. *Id*. at 5:19. Therefore, when Officer Willsey approached Defendant he continued to have an objectively reasonable suspicion that a traffic violation was occurring, i.e., the license plate was improperly displayed. *See United States v. Poke*, 81 F. App'x 712, 715 (10th Cir. 2003) (unpublished) (distinguishing *McSwain* in concluding that officer had reasonable suspicion—even

after confirming the presence of a license plate affixed to the back window—because Kansas law "require[d] that all vehicle registrations be 'clearly visible' and 'clearly legible.'"); *compare United States v. Pena-Montes*, 589 F.3d 1048, 1053 (10th Cir. 2009) (officer exceeded scope of traffic stop when he questioned driver after confirming presence of *dealer plate* in rear window, which carries a set of restrictions separate from those in § 66–3–18—restrictions that were not addressed by the court).[5]

### 2. *Inquiries Incident to the Traffic Stop*

It follows, then, that because Officer Willsey was investigating a continuing traffic violation, his request for Defendant's driver's license fell within the "ordinary inquiries incident to [the traffic] stop." *Rodriguez*, 575 U.S. at 355 (quoting *Illinois v. Caballes*, 543 U.S. 405, 408 (2005)). "Typically[,] such inquiries involve checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance." *Id.* (citations omitted). Furthermore, Officer Willsey's inquiry into the presence of weapons was likewise permissible and, contrary to Defendant's assertion, no reasonable suspicion was needed to support that inquiry.

First, because "'[t]raffic stops are especially fraught with danger to police officers,' law enforcement personnel may take 'certain negligibly burdensome precautions in order to complete [their] mission safely.'" *Cortez*, 965 F.3d at 838 (quoting *Rodriguez*, 575 U.S. at 356) (brackets in original). This includes asking "limited questions directed at ensuring officer safety." *Id.* (citing *Rodriguez*, 575 U.S. at 356); *see also United States v. Wilson*, 96 F. App'x 640, 645 (10th Cir. 2004) (unpublished) ("we noted in [*United States v. Holt*, 264 F.3d 1215, 1226 (10th Cir. 2001)] that

---

[5] Even if Officer Willsey had misinterpreted the scope of the traffic statute, a reasonable mistake of law can support reasonable suspicion. *See Heien v. North Carolina*, 574 U.S. 54, 60 (2014) ("The question here is whether reasonable suspicion can rest on a mistaken understanding of the scope of a legal prohibition. We hold that it can.").

merely asking a motorist whether there is a loaded weapon in the vehicle is relatively unintrusive"). Officer Willsey testified that he asked about the presence of weapons for his own safety, that it was a routine question, and that he had concerns about what might be in the vehicle, which stemmed from Defendant's body movement toward the floorboard and to the side when the stop was initiated. Hr'g Tr. at 7:7–13, 8:13–9:3.

Second, the question did not offend the Fourth Amendment because it did not measurably prolong the stop. *See Rodriguez*, 575 U.S. at 355 (citing *Muehler v. Mena*, 544 U.S. 93, 101 (2005) (because unrelated inquiries did not "exten[d] the time [petitioner] was detained[,] . . . no additional Fourth Amendment justification . . . was required")). Indeed, at the time of the question, Defendant was still retrieving his identification and Officer Willsey was still investigating the ongoing traffic violation. *See* Gov. Ex. 3 at 0:00:54. The Court finds that Officer Willsey's questions regarding Defendant's driver's license and weapons did not unreasonably exceed the initial scope of the stop.

**B. Reasonable Suspicion that Defendant was a Felon Unlawfully in Possession of a Firearm**

Defendant next argues that officers exceeded the scope of the traffic violation by detaining him after Officer Maxson observed a weapon in Ms. Garcia's purse. Defendant's argument on this point is twofold. First, Defendant asserts that the continued detention was unsupported by reasonable suspicion. Mot. at 9. Second, Defendant contends that officer safety did not justify his continued detention. *Id.* at 13. The Court disagrees.

A traffic stop may be "extended beyond [its initial] scope if the person stopped consents to the extension or if the police have a reasonable suspicion that other illegal activity has occurred or is occurring." *United States v. Lopez*, 849 F.3d 921, 925 (10th Cir. 2017). As with the initial justification for the stop, the government bears the burden to prove that any continued non-consensual detention was supported by particular objective facts from the totality of which it is

reasonable for a trained officer to believe crime is indicated. *See id.* "[R]easonable suspicion can be founded on a combination of factors that individually may be susceptible of innocent explanation." *Id.*

These suspicions must be more than a hunch, but the likelihood of criminal activity need not rise to the level of probable cause and may even be less than the prospect of guiltless conduct. *United States v. Madrid*, 713 F.3d 1251, 1256 (10th Cir. 2013). "Due to their 'experience and specialized training,' [the Court] 'accord[s] deference to an officer's ability to distinguish between innocent and suspicious actions.'" *Id.* (quoting *United States v. Gandara-Salinas*, 327 F.3d 1127, 1130 (10th Cir. 2003)). The objective standard is based on the facts available to the officer at the moment of the seizure, and the Court will not consider the officer's subjective motivations. *United States v. Winder*, 557 F.3d 1129, 1134 (10th Cir. 2009); *see also Whren*, 517 U.S. at 813 (constitutional reasonableness does not depend on actual motivations of individual officers involved).

Immediately after Officer Willsey asked Defendant about the presence of firearms (and was told that none existed), Officer Maxson saw in plain view a handgun in Ms. Garcia's purse, so he asked her to get out of the vehicle. Hr'g Tr. at 28:3-11; Gov. Ex. 4 at 0:00:24.[6]  Officer Maxson also received verbal confirmation from Ms. Garcia that a handgun was in her purse. Hr'g Tr. at 24:14–16. At this point, Officer Willsey, who was still investigating an ongoing traffic violation, was well within the scope of the stop to ask Defendant whether Ms. Garcia had a weapon. Once

---

[6] Defendant argues that New Mexico permits residents to lawfully carry a firearm inside a vehicle. *See* Mot. at 11. While that is a true statement of New Mexico law, the argument fails to consider that Defendant represented that *no weapons* were in the vehicle. Defendant further argues that Ms. Garcia's detention did not justify his detention given that she was the one who had the gun. *See* Mot. at 13. In addition to not prolonging Defendant's detention because of the ongoing traffic violation, therefore not implicating Defendant's Fourth Amendment rights, this argument again disregards articulable facts that support that the weapon was indeed Defendant's. It also disregards Tenth Circuit authority. *See United States v. Dennison*, 410 F.3d 1203, 1213 (10th Cir. 2005) ("[A] car passenger—unlike the unwitting tavern patron in *Ybarra*—will often be engaged in a common enterprise with the driver, and have the same interest in concealing the fruits or the evidence of their wrongdoing." (quoting *Wyoming v. Houghton*, 526 U.S. 295, 304–05 (1999))).

Defendant responded in the affirmative (after previously saying that no weapons were in the car),

Officer Willsey was justified in asking Defendant (who agreed) to step out of the vehicle for officer

safety.  *See Pennsylvania v. Mimms*, 434 U.S. 106, 111 (1977) (recognizing officer safety as an

important interest and courts must weigh "the intrusion into the driver's personal liberty . . . by the

order to get out of the car."); *United States v. Gurule*, 935 F.3d 878, 883 (10th Cir. 2019), as revised

(Oct. 10, 2019), cert. denied, 140 S. Ct. 1285, 206 L. Ed. 2d 265 (2020) (same).  Consequently, the

Court concludes that Defendant's minor inconvenience of exiting the vehicle was outweighed by

the presence of a weapon, especially when Defendant first represented that neither he nor Ms. Garcia

were armed.  *See Mimms*, 434 U.S. at 111 ("What is at most a mere inconvenience cannot prevail

when balanced against legitimate concerns for the officer's safety.").[7]

The Court also finds that Officer Willsey developed sufficient reasonable suspicion to further

detain Defendant to investigate a possible felony crime.  The following particularized and articulable

facts substantiated Officer Willsey's belief that a felony crime was being committed: (1)  Officer

Willsey noticed Defendant reach down to the floorboard and then reach toward the passenger side

when the traffic stop was initiated;[8] (2) Ms. Garcia had a handgun in her purse, even after Defendant

stated that no firearms were in the vehicle; (3) as Defendant exited the vehicle he told Officer Willsey

that he is "not allowed to have guns;" and (4) as Defendant got out of the vehicle Officer Willsey

observed a gun holster on the driver's side floorboard.  At this point, the traffic stop escalated into

an investigation of a felony offense (felon in possession of a firearm) supported by firm reasonable

---

[7] Although neither party addresses the issue, the Court further concludes that Officer Willsey was justified in conducting a limited pat-down of Defendant's person for officer safety.  In addition to Defendant's contradictory answer about firearms, Officer Willsey observed a gun holster on the driver's side as Defendant exited the vehicle that added justification for the pat-down.

[8] Defendant repeatedly argues that nervousness cannot amount to reasonable suspicion.  *See* Mot. at 9-10; Reply at 3. No officer testified that he believed Defendant was nervous.  Rather, Officer Willsey testified that Defendant's body movements were unusual.  *See* Hr'g Tr. 17:21–24.  And Defendant's movements were merely one of many factors that established reasonable suspicion that Defendant was a felon unlawfully possessing a weapon.

suspicion.   Thus, because Officer Willsey had an independent and justifiable basis to detain Defendant beyond the initial scope of the traffic stop, Defendant's remaining arguments concerning the traffic stop are irrelevant.

IT IS THEREFORE ORDERED THAT Defendant's MOTION TO SUPPRESS (Doc. 29) is DENIED.

_____
SENIOR UNITED STATES DISTRICT JUDGE